Lee v. Barr

BIA
Ruehle, IJ
A076 027 780

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of December, two thousand nineteen.

PRESENT:
>           JOHN M. WALKER, JR.,
>           PETER W. HALL,
>           DENNY CHIN,
>                 *Circuit Judges.*

_____

SIEW WAI LEE,
>           *Petitioner,*

>           v.                                              18-3
                                                            NAC

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,
>           *Respondent.*

_____

FOR PETITIONER:          John Chang, Esq., New York, NY.

FOR RESPONDENT:          Joseph A. Hunt, Assistant
                         Attorney General; Shelley R. Goad,
                         Assistant Director; Nancy Kwang
                         Canter, Trial Attorney, Office of
                         Immigration Litigation, United
                         States Department of Justice,
                         Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Siew Wai Lee, a native and citizen of Malaysia, seeks review of a December 22, 2017, decision of the BIA affirming a June 27, 2017, decision of an Immigration Judge ("IJ") denying Lee's motion to reopen. *In re Siew Wai Lee,* No. A076 027 780 (B.I.A. Dec. 22, 2017), *aff'g* No. A076 027 780 (Immig. Ct. Buffalo Jun. 27, 2017). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the IJ's decision as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005).

**I.  Changed Country Conditions**

We review the agency's denial of a motion to reopen for an abuse of discretion but review any finding regarding changed country conditions for substantial evidence. *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 168-69 (2d Cir. 2008).

An alien seeking to reopen proceedings may file only one

2

motion to reopen no later than 90 days after the date on which the final administrative decision was rendered. 8 U.S.C. § 1229a(c)(7)(A), (C)(i); 8 C.F.R. § 1003.23(b)(1). It is undisputed that Lee's 2017 motion to reopen was untimely because he filed it nearly 18 years after the IJ ordered him removed in 1999. However, the time limitation for filing a motion to reopen does not apply if reopening is sought to apply for asylum and the motion is "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); *see also* 8 C.F.R. § 1003.23(b)(4)(i). The agency did not abuse its discretion in denying reopening on this basis.

As the agency determined, Lee failed to establish a material change in conditions in Malaysia as needed to excuse his untimely filing. Lee submitted numerous articles to support his motion, but most of the articles did not discuss the treatment of people of Chinese descent or Buddhists, did not indicate the author and source, and/or were undated.

Beyond his own statements that he experienced discrimination, he did not submit any substantive evidence of conditions before his 1999 hearing as a comparison. *See In re S-Y-G-*, 24 I. & N. Dec. 247, 253 (BIA 2007) ("In determining whether evidence accompanying a motion to reopen demonstrates a material change in country conditions that would justify reopening, [the agency] compare[s] the evidence of country conditions submitted with the motion to those that existed at the time of the merits hearing below."). One article from 2009 does reference a 1969 riot between ethnic Malays and ethnic Chinese that resulted in 200 deaths over three days, but the article states that more recent protests have been non-violent, and that "Malaysians of all ethnicities enjoy increased freedom now to express themselves[.]" Certified Administrative Record at 429. The 2015 State Department Religious Freedom Report for Malaysia that the IJ took administrative notice of did not indicate that Buddhists were persecuted. The IJ also took administrative notice of the 2016 State Department Human Rights Report for Malaysia which stated that the ethnic Chinese population faced limitations in higher education, government employment, and forming

4

businesses, but it is unclear whether these limitations existed before 1999 and, if so, whether they had worsened. Based on this record, the agency did not err in determining that Lee failed to establish a material change in conditions in Malaysia.

Moreover, Lee's argument that the IJ ignored evidence is unsupported. The IJ explicitly stated that he considered Lee's articles from 2007 and 2010. *See Jian Hui Shao*, 546 F.3d at 169 (explaining that although the agency is required to "consider relevant evidence of country conditions[,]" the agency need not "expressly parse or refute on the record each individual argument or piece of evidence" (internal quotation marks omitted)). Lee also argues that the record reflects that there has been "cold-blooded murder of the Chinese" in Malaysia. But the article Lee relies on is an undated opinion piece by an unknown author about general race relations in Malaysia, and the "cold-blooded murder" line does not refer to a specific murder of any person because of race or ethnicity but is simply a hypothetical used by the author to decry racial tension.

Accordingly, because Lee failed to demonstrate a material

5

change in country conditions, the agency did not abuse its discretion in denying his motion to reopen as untimely. *See* 8 U.S.C. § 1229a(c)(7)(C). We do not reach the agency's alternate finding that Lee did not demonstrate prima facie eligibility for relief. *See INS v. Abudu*, 485 U.S. 94, 104-05 (1988) (observing that the agency may deny an untimely motion to reopen for failure to demonstrate materially changed country conditions or prima facie eligibility for the underlying substantive relief sought); *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

**II. Sua Sponte Reopening**

The agency also declined to exercise its authority to reopen sua sponte. While we generally lack jurisdiction to review the agency's "entirely discretionary" decision declining to reopen sua sponte, *Ali v. Gonzales*, 448 F.3d 515, 518 (2d Cir. 2006), we retain jurisdiction if the BIA "misperceived the legal background and thought, incorrectly, that a reopening would necessarily fail,"[1] *Mahmood v. Holder*,

_____

[1] We note that the BIA's denial of reopening predated *Pereira v. Sessions*, 138 S. Ct. 2105, 2109 (2018), and the BIA incorrectly stated that the notice to

6

570 F.3d 466, 469 (2d Cir. 2009). Lee argues that the BIA erred in finding that he was required to demonstrate due diligence in pursuing his case in order to warrant sua sponte reopening. But the BIA did not state this was a prerequisite; it simply considered that Lee failed to do so as part of its discretionary determination that he had not presented an exceptional situation. *See In re J-J-,* 21 I. & N. Dec. 976, 984 (BIA 1997) ("The power to reopen on our own motion is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship.").

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

---

appear stopped Lee's accrual of continuous presence for cancellation of removal. But we find no basis to remand. Lee does not argue this point, and the BIA has subsequently held that a hearing notice that provides the information omitted from the notice to appear stops the time, and Lee personally received such a notice shortly after his notice to appear. *In re Mendoza-Hernandez*, 27 I. & N. Dec. 520 (BIA 2019) (en banc).